IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN HAWES, | } |
| Plaintiff | } |
| vs. | } CIVIL ACTION NO. |
| TRINITY INDUSTRIES, INC., | } CV-98-AR-0869-S |
| Defendant | } |

**MEMORANDUM OPINION**

Presently before the court is a motion for summary judgment filed by defendant, Trinity Industries, Inc. ("Trinity"). The motion seeks judgment as a matter of law on claims brought by plaintiff, Kevin Hawes ("Hawes"), for intentional discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*. and 42 U.S.C.A. § 1981. For the reasons stated herein, the motion is due to be granted.

**Background**

Trinity operated a major rail car manufacturing facility in Bessemer, Alabama until June of 1997. On April 1, 1997 Trinity employees received word that the plant would be shut down. As a result of the shut down, over 500 employees turned in their time cards on May 30, 1997. One of those employees was Kevin Hawes.

Hawes is an African-American male who worked in the Lining

1

Department at Trinity's plant from 1986 until the plant closed down. Hawes began his career as an interior blaster in the Lining Department and was promoted to "lead-man" in that position.[1] Hawes then became an interior painter, retaining his position as lead-man. Hawes reported to Mark Kent ("Kent") and Dale Rhodes ("Rhodes"), who were supervisors in the Lining Department. Kent and Rhodes reported to the Lining Department superintendent, who, until February of 1997, was Thomas Rigsby ("Rigsby"). Rigsby reported to Homer Jump ("Jump"), the operations manager. Jump, in turn reported to Ken Cox ("Cox"), who was the plant manager. Most of the regular employees in the Lining Department were black, while Kent, Rhodes, Rigsby, Jump, and Cox were white.

In February of 1997, Rigsby voluntarily transferred to a position of lesser responsibility, leaving a vacancy in the Lining Department's superintendent position. Hawes expressed his interest in the position to Rigsby and to Jump. Instead of promoting Hawes, Jump chose to move Horace Nelson Doss ("Doss"), a white superintendent who acted as a "floater" assisting in other departments, into the vacancy in Lining. Immediately prior to becoming Lining Department superintendent, Doss had been assigned to assist the Blasting Department, which was adjacent to the Lining Department and often had overlapping responsibilities. The Blasting Department was having trouble producing its required six rail cars per day.

---

[1] A lead-man is a non-salaried employee who shows other employees "what to do or how to do it." *Depo. of Homer Jump*, at 7.

2

Based on Trinity's failure to promote him, Hawes filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 20, 1997, alleging that he was discriminated against on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* and 42 U.S.C.A. § 1981. On March 10, 1997, Hawes was demoted from lead-man to regular employee. Hawes filed a second EEOC charge on March 27, alleging that he was demoted in retaliation for filing a claim with the EEOC. Because Hawes makes no claim in his complaint relating to the alleged retaliation, Trinity's failure to promote Hawes is the only matter at issue in this lawsuit.

**Discussion**

Hawes offers no direct evidence of discriminatory intent, relying instead on indirect evidence to create a presumption of discrimination. Hawes therefore must prove his claim using the familiar analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *See Standard v. A.B.E.L. Serv. Inc.,* 161 F.3d 1318, 1331 (11th Cir. 1998). Under this framework, Hawes must produce evidence sufficient to establish a *prima facie* case of intentional discrimination. *See Standard,* 161 F.3d at 1331. The establishment of a *prima facie* case creates a presumption of discrimination. *See id.* In order to rebut this presumption, Trinity must then come forward with a legitimate, non-discriminatory reason for its employment action. *See id.* The burden then shifts back to Hawes to produce evidence indicating that the proffered reason is merely a

3

pretext to hide unlawful discrimination. *See id.*

### Hawes' Prima Facie Case

To establish a *prima facie* case, Hawes must show that (1) he is a member of a protected class; (2) that he was qualified for the promotion he sought; (3) that he was not promoted despite his qualifications; and (4) that the promotion was awarded to a person outside the protected class with equal or fewer qualifications. It is undisputed that Hawes is an African-American and that he did not receive the promotion to superintendent of the Lining Department. Hawes argues that his years of experience, many of them as a lead-man, working as an exterior blaster and interior painter qualified him for the promotion. Hawes further alleges that Doss was less qualified than he was because Doss had little, if any, experience in the paint area of the Lining Department.

Trinity contends that Hawes cannot make out his *prima facie* case because he was either <u>un</u>qualified for the position of superintendent or <u>less</u> qualified than Doss. First, Trinity points out Hawes had no supervisory experience, while Doss had worked as both supervisor and superintendent for years. As a result, Doss had received comprehensive training on safety and environmental requirements and had gone through a supervisor orientation (*Depo. of Homer Jump*, at 36). Doss was familiar with a supervisor's administrative tasks such as the paperwork going to the Personnel Office (*id*). Hawes had no such experience or knowledge. Trinity also adds that had Hawes received the promotion,

4

he would have been "jumping" two positions -- going from lead-man straight to superintendent instead of first serving as a supervisor. Trinity points out that such a leap in authority levels diverges from the usual manner in which an employee rises through the ranks (*Depo. of Homer Jump*, at 39). Second, Trinity concedes that "Hawes knew about lining," but adds that this knowledge "was as far as it went." (*Depo. of Homer Jump*, at 35). Doss, on the other hand, was a welder by trade and therefore knew about the machines and equipment used in the department. Doss had also "floated" through various departments and was familiar with many aspects of production.

Because Trinity appears to measure qualifications on a subjective basis without any written criteria, this court looks carefully at the employment decisions made. *See Lee v. Russell County Bd. of Ed.*, 684 F.2d 769 (11th Cir. 1982). Even viewing Trinity's argument with a critical eye, however, Doss does appear more qualified in an all-around sense than Hawes, making Hawes' chances of establishing a *prima facie* case questionable at best. Anticipating Hawes' ability to meet his burden of production, however, Trinity proffers several legitimate non-discriminatory reasons in rebuttal to Hawes' *prima facie* case. Proceeding in this manner relieves the court from determining whether Hawes in fact has established his required elements.

*Trinity's Rebuttal*

Assuming, *arguendo*, that Hawes makes out a *prima facie* case of discriminatory failure to promote, Trinity attempts to rebut the

5

presumption of discrimination by explaining its decision as motivated by legitimate business considerations, not race. First, Trinity repeats its argument that Doss's familiarity with supervisory matters and his substantive production knowledge made him more qualified than Hawes. Second, Trinity points out that Doss was superintendent of the Blasting Department immediately before being moved to Lining. Because Blasting is located immediately next to Lining and the work responsibilities of the two departments overlap considerably, Doss was unlikely to experience a tough transition period that might affect Trinity's productivity at a time that it was already having difficulty meeting its production schedule.[2] Third, and perhaps most significant, Trinity points out that by moving an existing superintendent to the Lining Department vacancy, it avoided the costs it would have incurred had it promoted an employee two levels down from superintendent. Such a promotion would have been accompanied by a significant pay raise and benefits package. Trinity argues the decision was motivated primarily by the company's concern for its bottom line.

Jump's deposition testimony summarizes Trinity's argument fairly well: "We had an experienced person that we had been using in another department. We were coming down to the final stages of this operation. Now, the sensible thing to cut costs like we did, we used one of the people we had, which was Nelson Doss. . . . he was experienced, he

---

[2] In deposition, Jump explained that Doss floated to areas needing assistance meeting their schedules so Trinity could finish an order and close the facility. The Blasting Department had been having trouble meeting its six car per day schedule, which prevented the Lining Department from meeting its schedule (*Depo. of Homer Jump*, at 13-18).

didn't need any training, didn't need the orientation needed for a supervisor." (*Depo. of Jump,* at 29). The legitimate, non-discriminatory reasons proffered by Trinity are more than sufficient to rebut Hawes' *prima facie* case, if indeed he is able to make it out.

<u>*Hawes' Attempt to Show Pretext*</u>

If Hawes provides sufficient reason to disbelieve that Trinity's stated explanations actually motivated the decision to move Doss to Lining Department superintendent, the inference of discrimination raised by Hawes' *prima facie* case (again assuming he can establish one) may allow Hawes to survive a motion for summary judgment. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). As set forth above, Trinity proffers three reasons to rebut any *prima facie* case that Hawes could establish: (1) Doss was more qualified than Hawes because of his supervisory experience and substantive knowledge; (2) Doss could easily assume the duties of the Lining Department because of his work in the closely related Blasting Department; and (3) promoting Hawes to superintendent would have cost Trinity money at a time when it was about to shut down operations. While Hawes does produce some evidence in an attempt to discredit Trinity's explanation, this evidence falls far short of establishing pretext. *See Standard*,

161 F.3d at 1334; *Combs*, 106 F.3d at 1543.[3]

**Conclusion**

Assuming, *arguendo*, that Hawes can establish a *prima facie* case of discriminatory failure to promote, Trinity has offered several legitimate, non-discriminatory reasons to rebut the presumption of discrimination created by the *prima facie* case. Hawes has produced no evidence that would allow a reasonable fact finder to disbelieve Trinity's stated reasons. Trinity's motion for summary judgment is therefore due to be granted. An appropriate order granting the motion and dismissing the action will be separately entered.

DONE this 1st day of March, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Even if Hawes were successful in rebutting one or more of Trinity's proferred reasons, Trinity will be entitled to judgment as a matter of law if one legitimate reason for its decision exists. *See Combs*, 106 F.3d at 1539-1543 (plaintiff successfully rebuts two of three proferred reasons for employment decision, employer entitled to judgment as a matter of law).